J-S05020-18

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
LYDELL TEEMAN COBBS :
:
Appellant : No. 885 WDA 2017

Appeal from the Judgment of Sentence March 7, 2016
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0013095-2002,
CP-02-CR-0013096-2002

BEFORE: OLSON, J., OTT, J., and STRASSBURGER*, J.

MEMORANDUM BY OTT, J.: FILED JUNE 25, 2018

Lydell Teeman Cobbs appeals from the judgment of sentence imposed

March 7, 2016, in the Allegheny County Court of Common Pleas. The trial

court sentenced Cobbs to an aggregate term of 10 to 20 years' imprisonment,

following the violation of his probation in two separate cases involving the

sexual abuse of a minor. On appeal, Cobbs argues the trial court erred and/or

abused its discretion in determining he violated the conditions of his probation.

For the reasons below, we affirm.

The facts underlying Cobbs' original conviction were summarized by the

trial court in a prior opinion as follows:

> During the year 2002, Cobbs was permitted overnight visits
> with his six year old biological daughter. During these visits, his
> daughter would be required to sleep in Cobbs' bed and on
> numerous occasions during the middle of the night Cobbs would
> wake up his daughter and force her to perform oral sex on him.
> The last time that Cobbs forced her to perform oral sex, she

_____

* Retired Senior Judge assigned to the Superior Court.

became sick and, in fact, threw up on Cobbs. Cobbs became enraged and struck her with a leather belt which he had done on previous occasions to coerce her to perform oral sex on him. After this incident, the six year old daughter went to her grandmother and told her what Cobbs was doing to her and the grandmother then separated Cobbs and his daughter and told his daughter to go to sleep in the bedroom with Cobbs' ten year old sister. The six year old went into the ten year old's bedroom and they discussed what was going on and the ten year old then revealed to the six year old that Cobbs had been doing the same things to her over an extended period of time. This information was then given to the Allegheny County Police Department, Sexual Assault and Child Abuse Unit, and they went and arrested Cobbs on these charges. After being given his Miranda[1] rights, Cobbs freely confessed to the police that he had, in fact, committed these crimes against his six year old daughter and his ten year old sister.

Trial Court Opinion, 2/23/2005, at 2-3.

Cobbs was charged in separate dockets for the crimes against each victim. On April 6, 2004, he entered a negotiated guilty plea encompassing both dockets: (1) at Docket No. 2002-13095, he pled guilty to involuntary deviate sexual intercourse (two counts), indecent assault (two counts), indecent exposure (two counts), endangering the welfare of a child, and corruption of minors,[2] for the offenses against his daughter; and (2) at Docket No. 2002-13096, he pled guilty to involuntary deviate sexual intercourse, indecent assault, incest and corruption of minors,[3] for the offenses against his sister. Following a hearing conducted in August of 2004, the trial court

_____

[1] See Miranda v. Arizona, 384 U.S. 436 (1966).

[2] See 18 Pa.C.S. §§ 3123, 3126, 3127, 4304, and 6301, respectively.

[3] See 18 Pa.C.S. §§ 3123, 3126, 4302, and 6301, respectively.

determined Cobbs met the criteria for classification as a sexually violent predator under the now-defunct Megan's Law, and on August 5, 2004, sentenced him to an aggregate term of five to 10 years' imprisonment, followed by five years' probation. Cobbs filed a direct appeal challenging only his classification as a sexually violent predator. A panel of this Court affirmed his judgment of sentence, and the Pennsylvania Supreme Court denied his petition for review. See Commonwealth v. Cobbs, 883 A.2d 685 (Pa. Super. 2005) (unpublished memorandum), appeal denied, 891 A.2d 729 (Pa. 2005).

In December of 2012, after Cobbs served his maximum term of imprisonment, he was released to begin his five-year probationary sentence. On December 24, 2012, he signed three forms which outlined the conditions of his probationary supervision as a convicted sex offender: (1) Standard Special Conditions for Sex Offenders; (2) Optional Special Conditions for Sex Offenders, and (3) Supplemental Special Conditions for Sex Offenders. Cobbs was subsequently arrested for technical violations of his probation, specifically for engaging in assaultive behavior. Following a hearing on July 1, 2013, the trial court entered a new sentencing order, substantially the same as the prior order, and directed that the sentence include the standard special conditions for sex offenders that Cobbs acknowledged he had signed. See Order, 7/1/2013; N.T., 7/1/2013, at 4. Cobbs remained incarcerated, and appeared for hearings on March 3, 2014, and March 2, 2015, because he was unable to obtain acceptable housing. At the March 2015 hearing, the court transferred

his probationary supervision to the county. Thereafter, Cobbs obtained approved housing at Steadfast Ministries.

However, on June 25, 2015, a detainer was issued for him due to several alleged probation violations, including: (1) he had failed to abide by the policies of Steadfast Ministries, (2) he was seen in one of his girlfriends' vehicles with a minor in the car, and (3) he admitted to having five girlfriends, three of whom had minor children. A violation hearing was held on September 14, 2015. However, the court took no action on the alleged violations, but modified Cobbs' sentence to include a new residence. Cobbs was subsequently released from prison on October 2, 2015.

Once again, on November 17, 2015, Cobbs was arrested for violating the terms of his probation. At the December 7, 2015, violation hearing, Cobbs' supervising probation officer testified that Cobbs reported to her office on November 17, 2015, and stated he had obtained a new cell phone a few days ago. See N.T., 12/7/2015, at 3. However, after noticing the date stamps on several photographs saved on the phone, the officer discovered that Cobbs had actually gotten the phone in September and failed to report it. Further, the phone contained "pictures of minors [Cobbs] was around, posing with individuals at bars and with alcohol[, and] pictures of him posing with men that appeared to be drug dealers[, although Cobbs] stated that they were not selling drugs, rather [] some narcotic pain pills[.]" Id. at 4. Cobbs' probation officer stated this behavior, coupled with his previous violations, justified the

revocation of his probation and resentencing to a term of incarceration. See id. at 5.

Cobbs' attorney responded that Cobbs "understands he's violated the conditions of [his] probation," but argued that he was not acting as a predator towards any of the minors in the pictures. Id. at 6. Further, counsel requested a county sentence, or alternatively, a continuance so that a new presentence investigation could be completed before the court imposed a new sentence. See id. at 6-7. The trial court continued the hearing until March 7, 2016.

At the March 7, 2016, hearing, the court indicated it had reviewed the presentence investigation report. Cobbs testified he was complying with the terms of his probation, and he did not realize there was a minor in the picture on his phone. See N.T. 3/7/2016, at 9-10. He further denied having multiple girlfriends with children, and stated "[t]he only incident with a child was with Sidney, with her little nephew in the back of the car." Id. at 13. At the conclusion of the hearing, the trial court revoked Cobbs' probation, and resentenced him to an aggregate term of 10 to 20 years' imprisonment.

Cobbs filed a pro se post-sentence motion seeking reconsideration of his sentence on March 23, 2016, followed by a pro se PCRA[4] petition on June 21, 2016. Counsel was appointed, and filed an amended PCRA petition on February 2, 2017, seeking, inter alia, reinstatement of Cobbs' post-sentence

_____

[4] Post Conviction Relief Act, 42 Pa.C.S. §§ 9541-9546.

and direct appeal rights from the March 7, 2016, judgment of sentence. On May 8, 2017, the PCRA court granted Cobbs' requested relief. Thereafter, on May 17, 2017, Cobbs filed a post-sentence motion seeking modification of his sentence, and challenging the bases for the court's revocation of his probation. The trial court expressly granted reconsideration on May 19, 2017, and, following a hearing, subsequently denied Cobbs relief. This timely appeal followed.[5]

The sole issue raised on appeal challenges the trial court's determination that Cobbs violated conditions of his probationary sentence. Our review is guided by the following:

> The Sentencing Code prescribes, with respect to the imposition of conditions of probation, that "[t]he court shall attach such of the reasonable conditions authorized by subsection (c) of this section as it deems necessary to insure or assist the defendant in leading a law-abiding life." 42 Pa.C.S. § 9754(b). In Commonwealth v. Vilsaint, 893 A.2d 753 (Pa. Super. 2006), a panel of this Court, citing 42 Pa.C.S. § 9754(b), held that "the legislature has specifically empowered the court, not the probation offices and not any individual probation officers, to impose the terms of probation." Id. at 757. Furthermore, in Commonwealth v. MacGregor, 912 A.2d 315 (Pa. Super. 2006), this Court noted that a sentencing court cannot revoke probation based upon a probationer's violation of a condition imposed solely by a probation office.
>
> When assessing whether to revoke probation, the trial court must balance "the interests of society in preventing future criminal conduct by the defendant against the possibility of rehabilitating the defendant outside of prison." Commonwealth v. Ballard, 814 A.2d 1242, 1245 (Pa. Super. 2003). In order to

---

[5] Concomitant with his notice of appeal, Cobbs filed a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).

- 6 -

uphold a revocation of probation, the Commonwealth must show by a preponderance of the evidence that a defendant violated his probation. Commonwealth v. Shimonvich, 858 A.2d 132, 134 (Pa. Super. 2004).

Commonwealth v. Allshouse, 33 A.3d 31, 37 (Pa. Super. 2011), appeal denied, 49 A.3d 441 (Pa. 2012). Accord Commonwealth v. Simmons, 56 A.3d 1280, 1284 (Pa. Super. 2012), aff'd, 91 A.3d 102 (Pa. 2014).

Nevertheless, while a condition of probation must be court-imposed pursuant to the Sentencing Code, the Pennsylvania Supreme Court recognized that the Board of Probation and Parole and its agents have statutory authority to impose conditions of supervision upon probationers. See Commonwealth v. Elliott, 50 A.3d 1284, 1291 (Pa. 2012), citing 61 Pa.C.S. §§ 6131(a)(5)(ii), 6151. However, the Court emphasized the Board and its agents "cannot impose any condition of supervision it wishes, carte blanche." Id. at 1291. Rather, probation officers may "impose conditions of supervision that are germane to, elaborate on, or interpret any conditions of probation that are imposed by the trial court." Id. at 1292. The Elliott Court opined:

This interpretation gives meaning to all of the statutory provisions relevant to this case and thus: (1) maintains the sentencing authority solely with a trial court; (2) permits the Board and its agents to evaluate probationers on a one-on-one basis to effectuate supervision; (3) sustains the ability of the Board to impose conditions of supervision; and (4) authorizes that a probationer may be detained, arrested, and "violated" for failing to comply with either a condition of probation or a condition of supervision. In summary, a trial court may impose conditions of probation in a generalized manner, and the Board or its agents may impose more specific conditions of supervision pertaining to that probation, so long as those supervision conditions are in furtherance of the trial court's conditions of probation.

Id. (footnote omitted and emphasis supplied).

In the present case, Cobbs argues the purported violations, for which the trial court revoked his probation, were not court-imposed conditions of his probationary sentence. See Cobbs' Brief at 15-19. He summarizes those violations as follows: (1) he had curfew violations and issues while staying at Steadfast Ministries; (2) he was seen in June of 2016 in his girlfriend's car with a minor child also in the car; (3) he had a photo of a minor on his cell phone; (4) he had photos of himself posing with individuals in a bar with alcohol, and with men who appeared to be drug dealers; (5) he had five girlfriends, three of whom had minor children; (6) he had 50 misconducts while serving his 10-year prison term; and (7) he failed to immediately report his purchase of a cell phone to his probation officer. See id. at 15-16.[6] Cobbs insists none of the behaviors listed above violated any court-imposed condition of his probation. Indeed, his sentencing order checked only one special condition, that is, he was prohibited from having any contact with the victims of his crimes. See Order, 8/5/2004. Furthermore, while he acknowledges the court later adopted the conditions set forth in the Standard Special Conditions for Sex Offenders, a document he signed after he was released from prison, Cobbs maintains none of his actions violated any of the

_____

[6] Cobbs also complains the trial court revoked his probation, in part, because he failed to pay fines and costs. See Cobbs' Brief at 15. However, the trial court clarified in its opinion that Cobbs' failure to pay these amounts "played no part in the determination that he was in violation" of his probation. Trial Court Opinion, 10/24/2017, at 4.

conditions listed therein. See Cobbs' Brief at 17-19. See also Appendix to Brief in Support of Amended PCRA, 2/2/2017, Standard Special Conditions for Sex Offenders. Rather, he maintains the basis for these alleged violations would have been in the Optional Special Conditions for Sex Offenders and the Supplemental Special Conditions for Sex Offenders, both of which he signed, but were not specifically adopted or imposed by the trial court. See Cobbs' Brief at 23. Moreover, because the conditions set forth in those documents were not "in furtherance of the conditions of probation adopted by the Court of Common Pleas and, on the contrary, are incongruous with, and in derogation of, the Standard [Special Conditions for Sex Offenders] adopted by that Court," Cobbs insists the record does not support the court's determination that he violated conditions of his probation. Id. at 26-27.

Preliminarily, we note our review of the record reveals no basis to support a finding that Cobbs was instructed to refrain from drinking alcohol as a condition of his probation. Although the Commonwealth contends Cobbs was required to exhibit "good behavior,"[7] as a panel of this Court observed in Vilsaint, "[d]rinking alcohol and/or being intoxicated are not illegal in and of themselves." Vilsaint, 893 A.2d at 757 n.5. Accordingly, the Vilsaint panel rejected the argument that refraining from drinking alcohol was "in the realm of 'implied conditions' of probation." Id. Therefore, we agree with Cobbs that

_____

[7] Commonwealth's Brief at 24.

- 9 -

the court had no basis to revoke his probation based upon his consumption of alcohol.

Nevertheless, we agree with the Commonwealth's argument that Cobbs' behavior violated the Optional and Supplemental Special Conditions for Sex Offenders, which he signed and acknowledged.[8]  See Commonwealth's Brief at 24.  First, absent prior approval from his probation officer, Cobbs obtained a cell phone, which had saved at least one picture of a minor, in violation of the Supplemental Special Conditions relating to contraband.  See Appendix to Brief in Support of Amended PCRA, 2/2/2017, Supplemental Special Conditions for Sex Offenders, at 3 (prohibiting Cobbs from purchasing or possessing "any photography equipment," including "camera phones," or any photographs of a person under the age of 18, without "prior written approval of probation/parole supervision staff").  Moreover, Cobbs was seen in a vehicle driven by one of his girlfriends, with a minor in the back seat, in violation of the Optional Special Conditions for Sex Offenders.  See id., Optional Special

_____

[8] We note the Commonwealth also asserts Cobbs' argument is waived on appeal because his attorney did not challenge the validity of the special sex offender condition during his revocation hearing, and, in fact, conceded he had violated the terms of his probation.  See Commonwealth's Brief at 16. Nonetheless, we decline to find waiver.  First, we disagree that counsel's brief statement during the December 2015 hearing that Cobbs "understands he's violated the conditions of [his] probation," constitutes a knowing and voluntary admission.  N.T, 12/7/2015, at 6.  Furthermore, Cobbs raised the argument on appeal in his post-sentence motion nunc pro tunc.  See Motion for Reconsideration of March 7, 2016 Sentence, 5/17/2017, at ¶ 22. Accordingly, we find his claim is preserved for our review.

Conditions for Sex Offenders, at 1 (prohibiting Cobbs from have any contact with persons under the age of 18 without prior written approval). Cobbs also admitted to probation staff that he had five girlfriends, three of which had minor children,[9] in violation of the Optional Special Conditions. See id. at 1 (prohibiting Cobbs from forming a romantic relationship with any person who has custody of, or visitation rights with, anyone under the age of 18 without prior approval).

Cobbs insists, however, that his violation of the Optional and Supplemental Special Conditions should not have been a basis for the court's revocation of his probation because these conditions were not court-imposed, and were not "in furtherance" of the conditions specifically adopted by the trial court. Cobbs' Brief at 26. We disagree. The Standard Special Conditions for Sex Offenders, which the trial court specifically adopted, prohibited Cobbs from having any contact with his victims, both of whom were minors, as well as required him to provide his probation officer with "unlimited access to any … multimedia device" including cell phones. Appendix to Brief in Support of Amended PCRA, 2/2/2017, Standard Special Conditions for Sex Offenders, at 1-2. The additional requirements that Cobbs obtain prior approval before having contact with minors, entering into a relationship with a person who has custody of a minor, or obtaining a cell phone with photographic capabilities, are all in furtherance of the court-imposed conditions.

_____

[9] See N.T., 9/14/2015, at 4.

We also reject Cobbs' attempt to minimize his violations by emphasizing his contact with the minor in the vehicle was a "one-time encounter[]" where no actual physical contact occurred, and the photo of the minor on his cell phone was not "sexually explicit in nature." Cobbs' Brief at 24, 25. Furthermore, he contends his delay in reporting possession of a cell phone was only "for a short period of time" and not "a violation which was contemplated by the Court of Common Pleas' conditions." Id. at 25. The Commonwealth was required to demonstrate by a preponderance of the evidence that Cobbs violated the conditions of his probation. See Allshouse, supra. The trial court determined the Commonwealth met this burden, with the exception of violating probation because of his consumption of alcohol. We find no basis to disagree. Indeed, the fact that Cobbs did not commit more egregious violations does not excuse his behavior. Moreover, he admits that a court can "consider prior history/conduct when considering whether to revoke probation and impose a new sentence of incarceration when a probationee is before the court because of alleged new/recent violations." Cobbs' Brief at 17 n.7. Here, the record reveals Cobbs had difficulty complying with the terms of his probation from the time he was released from prison. However, the court refrained from imposing a new term of incarceration until the most recent cell phone violation. Accordingly, no relief is warranted.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/25/2018